## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| NADIA BIGLARI, | **CASE NO. 4:22-cv-3268** |
| PLAINTIFF, | |
| v. | **COMPLAINT** |
| | **(1) Title IX Violation** |
| UNIVERSITY OF NEBRASKA | **(2) First Amendment Violation** |
| LINCOLN, by and through its Board of | **(3) Fourteenth Amendment Violation** |
| Regents; ERIC DODDS; in his official | **(4) Intentional Infliction of Emotional** |
| and individual capacity; | **Distress** |
| CHRISTOPHER MCCUNE, in his | **(5) Negligent Infliction of Emotional** |
| official and individual capacity, | **Distress** |
| DEFENDANTS. | **JURY TRIAL DEMAND** |

## AMENDED COMPLAINT

### I.    INTRODUCTION

This is an action arising from Plaintiff being subjected to and enduring sexual misconduct while a student at the University of Nebraska Lincoln. Plaintiff is seeking damages for Defendants' violation of Plaintiff's Title IX of the Educational Amendments of 1972, First Amendment, Fourteenth Amendment and state law claim.

### II.    PARTIES

1.    Nadia Biglari ("Plaintiff") is a former graduate student of the University of Nebraska Lincoln and a resident of Nebraska.

2.     Defendant University of Nebraska Lincoln by and through its Board of Regents ("University") is a public University in Lincoln, Nebraska.

3.     Defendant Eric Dodds ("Dodds") was employed by the University at all times relevant to this litigation.

4.     Defendant Christopher McCune ("McCune") was employed by the University at all times relevant to this litigation.

## III.    JURISDICTION & VENUE

5.     This court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331, which provides district courts with jurisdiction over civil actions arising under the United States Constitution or laws of the United States.

6.     In accordance with 28 U.S.C. § 1367, this Court also has supplemental jurisdiction over Plaintiff's state law claims for Intentional and Negligent Infliction of Emotional Distress.

7.     University conducts business in the State of Nebraska.

8.     Individual Defendants were employees of the University at all relevant times herein and personally violated certain rights and policies, the effects of which were felt in the State of Nebraska.

9.     Venue in this action is proper in this court as the events relevant to this action occurred primarily within this court's geographical boundaries.

## IV.    FACTUAL ALLEGATIONS

10.     Plaintiff was a student at the University pursuing a chemistry degree.

11.     On December 21, 2019, McCune subjected Plaintiff to unwelcomed sexual behavior by hugging Plaintiff from behind while dancing at an establishment, The Max.

12.     On December 21, 2019, while at The Max, McCune purchased a drink for Plaintiff and put drug(s) in her drink.

13.     On December 21, 2019, after leaving The Max while in McCune's vehicle, McCune put his hands in Plaintiff's pants and rubbed Plaintiff's genitals.

14.     On December 21, 2019, at McCune's apartment, McCune undressed Plaintiff, penetrated Plaintiff's vagina with his fingers and performed oral sex on Plaintiff.

15.     Plaintiff was unable to consent due to being under the influence of alcohol and/or drug(s) which was purchased and administered by McCune.

16.     The University's Policy, Chapter 2.1.8, Sexual Misconduct, subsection 6 states:

> cc. "Sexual misconduct" includes dating violence, domestic assault, domestic violence, rape, sexual assault, sexual harassment, and stalking.
>
> z. "Sexual assault" is committed when an actor subjects a person to sexual penetration (i) without the consent of the person, (ii) when the actor knew or should have known that the person was mentally or physically incapable

of resisting or appreciating the nature of the person's own conduct, (iii) when the actor is at least nineteen years of age and the person is under twelve, or (iv) when the actor is twenty-five years of age or older when the person is at least twelve years of age but less than sixteen years of age. Sexual assault is also committed when an actor subjects a person to sexual contact (a) without consent of the person, or (b) when the actor knew or should have known that the person was physically or mentally incapable of resisting or appraising the nature of the person's own conduct. Sexual assault by contact should be punished more severely if the actor causes serious personal injury to a person than if the actor shall not have caused serious personal injury.

g. "Consent" means agreement, approval, or permission as to some act or purpose, given voluntarily by a competent person. Nebraska law states "without consent" means:

(1) (i) The person was compelled to submit due to the use of force or threat of force or coercion, or (ii) the person expressed a lack of consent through words, or (iii) the person expressed a lack of consent through conduct, or (iv) the consent, if any was actually given, was the result of the actor's deception as to the identity of the actor or the nature or purpose of the act on the part of the actor;

(2) The person need only resist, either verbally or physically, so as to make the person's refusal to consent genuine and real and so as to reasonably make known to the actor the person's refusal to consent; and

(3) A person need not resist verbally or physically where it would be useless or futile to do so.

(4) In the above text, the word "person" means the individual against whom a wrongful act was allegedly committed, and the word "actor" is the individual alleged to have committed a wrongful act. When the actor knew or should have known that a person was mentally or physically incapable of resisting or understanding the nature of his or her conduct, there is no consent. A person may be incapacitated due to intoxication, mental illness or deficiency or by physical illness or disability to the extent that personal decision-making is impossible. Surprise may also prevent resistance, as where a person is grabbed from behind. There are some persons who the law presumes are incapable of consenting to sexual contact or penetration by an actor by reason of their age. Under Nebraska law an actor nineteen years of age or older may not subject a person under the age of sixteen years of age to sexual penetration, or a person under fifteen years of age to sexual contact. aa. "Sexual contact" means the intentional touching of a person's intimate parts or the intentional touching of a person's clothing covering the

immediate area of the person's intimate parts. Sexual contact also means the touching by the person of the actor's intimate parts or the clothing covering the immediate area of the actor's intimate parts when such touching is intentionally caused by the actor. Sexual contact shall include only such conduct which can be reasonably construed as being for the purpose of sexual arousal or gratification of either party.

dd. "Sexual penetration" means sexual intercourse in its ordinary meaning, cunninlingus, fellatio, anal intercourse or any intrusion, however slight, of any part of the actor's or person's body or any object manipulated by the actor into the genital or anal openings of the person's body which can be reasonably construed as being for nonmedical or nonhealth purposes. Sexual penetration does not require emission of semen.

17.    On December 27, 2019, Plaintiff reported to the University McCune's sexual assault and violations of the University's policies.

18.    Subsequent to Plaintiff's reporting of the sexual assault, Dodds engaged in the following retaliatory conduct directed at Plaintiff:

(1) Dodds would not allow Plaintiff to continue her research required for the graduate program at the University.

(2) Dodds told Plaintiff not to attend any group meetings required in the graduate program at the University.

(3) Dodds gave Plaintiff's graduate program research project to another student.

(4) Dodds excluded Plaintiff from the research lab where Plaintiff was required to complete research for the graduate program at the University.

(5) Dodds told Plaintiff to transfer, take a semester off, or to get a job rather than continuing in the current graduate program at the University.

(6) Dodds and the University caused Plaintiff a hostile environment.

(7) Plaintiff was forced to attend classes with Dodds.

(8) While Plaintiff was forced to attend classes with Dodds, Dodds gave "unwelcomed and dismissive" looks at Plaintiff.

(9) Due to Dodds' retaliatory behavior, Plaintiff was placed in a hostile environment while using her office space.

(10) Due to the hostile environment created by Dodds and the University, Plaintiff was forced to drop her classes and resign her plans, dreams, intentions and detrimental reliance on obtaining a graduate degree from the University.

(11) Plaintiff was not invited or allowed to attend a thesis defense/presentation of another student in Dodds' lab.

19.    On January 15, 2020, Plaintiff via email asked Dodds if she could continue the required research to complete her academic coursework.

20.    On January 16, 2020, Dodds responded to Plaintiff's email and advised Plaintiff that it was not productive for her to continue the required research to complete her academic coursework and further stated that there was no longer a need for Plaintiff to attend group meetings.

21.    Plaintiff went to Dodds' office and asked, "What if I don't get into some other program, can I please continue my research?"

22.    Plaintiff reported to the University that Dodds had denied her the right to continue her required research.

23.    Plaintiff reported to the University that Dodds told Plaintiff to take a semester off the University, transfer from the University to another university, and to get a job.

24.    Plaintiff requested via email to be allowed to continue her research from the University.

25.    In response to Plaintiff's email to the University, requesting to continue the research needed to complete the graduate program at the University, the University told Plaintiff that it was not a good idea, that Dodds didn't want her back, and that it was not a good fit.

26.    Plaintiff sent an email to the University requesting a "non-hostile" environment that would not subject her to "further academic abuse."

27.    The University's policies regarding retaliation are:

8

1.1.3   Reporting   Suspecting   University-Related   Misconduct   and Prohibition Against Retaliation.

(2) Retaliation Prohibited. No individual shall take retaliatory action against any other individual for reporting suspected University-related misconduct or for assisting in an authorized investigation of alleged University-related misconduct. Retaliation under this policy means an adverse action or threat made against an individual in response to a good-faith report of a known or suspected violation of law or policy. Retaliation, which includes any action that is likely to deter whistleblowing, may result in disciplinary action up to, and including, expulsion, termination of employment or termination of contract.

2.1.8 Sexual Misconduct, 4.3.2 "Retaliation" against the Complainant or a third party in an attempt to prevent or otherwise obstruct the reporting or remediation of sexual misconduct is prohibited.

28.     Nearly four months after the sexual assault on Plaintiff and the reporting of same to the University, on April 13, 2020, the University conducted an independent investigation ("IEC").

29.     The IEC rendered: "Based on the totality of the circumstances and the information obtained pursuant to this investigation, and a more likely than not

standard of proof, the greater weight of the evidence shows McCune did engage in sexual misconduct as defined by the University, Section 2.1.8.".

30.     Pursuant to the investigation, the IEC recommended that McCune's employment at the University be terminated.

31.     The University failed and/or refused to adhere to the recommendations of the IEP to terminate McCune.

32.     The IEC recommendation was based "upon the greater weight of the evidence, which supports that McCune engaged in sexual assault and sexual harassment in violation of the university sexual misconduct policies."

33.     Due to the Defendants' discriminatory and retaliatory actions, Plaintiff did not obtain her graduate degree from the University and was therefore forced to attend another university.

34.     Plaintiff suffered damages by expending significant time, money and resources in the graduate program at the University.

35.     Plaintiff suffered financial, mental, and emotional distress at the hands of Defendants.

36.     Under federal and Nebraska law, an employer may be vicariously liable for an employee's actions when they are acting within the scope of their employment on behalf of the employer.

## V.     CAUSES OF ACTION

10

## COUNT ONE – VIOLATION OF TITLE IX OF THE EDUCATION ACT AMENDMENTS OF 1972

### (Against all Defendants)

37.    Plaintiff restates every fact and allegation set forth in all paragraphs of this Complaint as if fully set out herein.

38.    Title IX of the Education Act Amendments of 1972 (20 U.S.C. § 1681) prohibits discrimination based on sex in educational institutions receiving federal funding.

39.    At all times herein mentioned, the University was a public university receiving federal financial assistance through grants and federally assisted tuition payments collected from students.

40.    34 CFR § 106.44 provides that such institutions must respond affirmatively to when a school official with the ability to take corrective measures receives actual knowledge that a student may have been discriminated against on the basis of sex.

41.    Defendants committed sex-based discrimination and/or retaliation as stated in the facts contained herein.

42.    McCune sexually assaulted Plaintiff.

43.    Defendants violated Plaintiff's First Amendment by retaliating against her based on her complaints of Title IX discrimination.

44.    On December 27, 2019, Plaintiff reported to the University McCune's sexual assault and violations of the University's policies.

45.    Subsequent to Plaintiff's reporting of the sexual assault, McCune engaged in the following retaliatory conduct directed at Plaintiff:

(1) Dodds would not allow Plaintiff to continue her research required for the graduate program at the University.

(2) Dodds told Plaintiff not to attend any group meetings required in the graduate program at the University.

(3) Dodds gave Plaintiff's graduate program research project to another student.

(4) Dodds excluded Plaintiff from the research lab where Plaintiff was required to complete research for the graduate program at the University.

(5) Dodds told Plaintiff to transfer, take a semester off, or to get a job rather than continuing in the current graduate program at the University.

(6) Dodds and the University caused Plaintiff a hostile environment.

(7) Plaintiff was forced to attend classes with Dodds.

(8) While Plaintiff was forced to attend classes with Dodds, Dodds gave "unwelcomed and dismissive" looks at Plaintiff.

(9) Due to Dodds' retaliatory behavior, Plaintiff was placed in a hostile environment while using her office space.

(10) Due to the hostile environment created by Dodds and the University, Plaintiff was forced to drop her classes and resign her plans, dreams, intentions and detrimental reliance on obtaining a graduate degree from the University.

(11) Plaintiff was not invited or allowed to attend a thesis defense/presentation of another student in Dodds' lab.

46.    Dodds told Plaintiff to take the semester off from the University, transfer from the University to another university, and to get a job.

47.    Plaintiff reported to the University that Dodds had denied her the right to continue her required research.

48.    Plaintiff reported to the University that Dodds told Plaintiff to take a semester off the University, transfer from the University to another university, and to get a job.

49.    Nearly four months after the sexual assault on Plaintiff and the reporting of same to the University, on April 13, 2020, the University conducted an independent investigation ("IEC").

50.    The IEC rendered: "Based on the totality of the circumstances and the information obtained pursuant to this investigation, and a more likely than not standard of proof, the greater weight of the evidence shows McCune did engage in sexual misconduct as defined by the University, Section 2.1.8.".

51.     Pursuant to the investigation, the IEC recommended that McCune's employment at the University be terminated.

52.     The University failed and or refused to adhere to the recommendations of the IEP to terminate McCune.

53.     The IEC recommendation was based "upon the greater weight of the evidence, which supports that McCune engaged in sexual assault and sexual harassment in violation of the university sexual misconduct policies."

54.     Plaintiff's complaint to the University that Dodds denied her the ability to complete her research or access to group meetings or to complete her academic coursework.

55.     Due to the Defendants' discriminatory and retaliatory actions, Plaintiff did not obtain her graduate degree from the University and was therefore forced to attend another university.

56.     Based on the University's failure/refusal to take immediate remedial actions based on Plaintiff's December 27, 2019 and subsequent complaints of retaliation, the University condoned Dodds' denial of Plaintiff obtaining her degree and itself denied Plaintiff's right to an education without sex-based discrimination and retaliation.

57.     The sex-based discrimination was so severe that it barred Plaintiff's access to an equal opportunity to education as it took her chances of training, learning and gaining experience needed to obtain employment in her field.

58.     As a direct and proximate result of Defendants' unlawful discrimination and retaliation, Plaintiff has suffered economical and emotional damages.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that this Court:

(a)     Enter judgment against Defendants and in favor of Plaintiff for actual damages for financial loss, mental anguish, and emotional distress and punitive damages in amounts to be determined at trial and as are allowed under the statutes for which claims are stated herein;

(b)     Enter judgment against Defendants and in favor of Plaintiff for an injunction prohibiting the Defendants' wrongful actions, a fair investigation into Defendants' action and appropriate discipline of each of the individual Defendants;

(c)     Enter judgment against Defendants and in favor of Plaintiff requiring Defendants to allowing Plaintiff reentry into the academic program from which she was enrolled  at the time of the adversarial actions complained herein;

(d)      Enter judgment against Defendants and in favor of Plaintiff for all costs

sustained in connection with the prosecution of this action, including attorneys'

fees and costs; and

(d)      Grant such other and further relief as justice requires.

## COUNT TWO – FIRST AMENDMENT RETALIATION

### (Against all Defendants)

59.      Plaintiff restates every fact and allegation set forth in all paragraphs of

this Complaint as if fully set out herein.

60.      Defendants denied Plaintiff's First Amendment rights by retaliating

against Plaintiff for reporting to the University of McCune's sexual assault, sex-

based discrimination and retaliation.

61.      Under 42 U.S.C. § 1983, Plaintiff is protected from violations of rights

guaranteed to her by the Constitution and laws of the United States.

62.      Plaintiff engaged in protected conduct when she made complaints of

sexual assault, discrimination and retaliation in violation of Title IX and the

Fourteenth Amendment.

63.      Plaintiff's constitutionally guaranteed, essential, and well-established

right to freedom of speech protects her ability to seek redress for sexual assault, sex

discrimination and retaliation in violation of Title IX and state law.

64.     Dodds retaliated against Plaintiff in direct proximity of time to Plaintiff's complaints of sexual assault, sex discrimination and retaliation in violation of Title IX and state law.

65.     On December 27, 2019, Plaintiff reported to the University McCune's sexual assault and violations of the University's policies.

66.     Subsequent to Plaintiff's reporting of the sexual assault, Dodds engaged in the following retaliatory conduct directed at Plaintiff:

> (1) Dodds would not allow Plaintiff to continue her research required for the graduate program at the University.
>
> (2) Dodds told Plaintiff not to attend any group meetings required in the graduate program at the University.
>
> (3) Dodds gave Plaintiff's graduate program research project to another student.
>
> (4) Dodds excluded Plaintiff from the research lab where Plaintiff was required to complete research for the graduate program at the University.
>
> (5) Dodds told Plaintiff to transfer, take a semester off, or to get a job rather than continuing in the current graduate program at the University.
>
> (6) Dodds and the University caused Plaintiff a hostile environment.
>
> (7) Plaintiff was forced to attend classes with Dodds.

(8) While Plaintiff was forced to attend classes with Dodds, Dodds gave "unwelcomed and dismissive" looks at Plaintiff.

(9) Plaintiff was excluded from Dodds' mandatory research lab.

(10) Due to Dodds' retaliatory behavior, Plaintiff was placed in a hostile environment while using her office space.

(11) Due to the hostile environment created by Dodds and the University, Plaintiff was forced to drop her classes and resign her plans, dreams, intentions and detrimental reliance on obtaining a graduate degree from the University.

(12) Plaintiff was not invited or allowed to attend a thesis defense/presentation of another student in Dodds' lab.

67.     In retaliation to Plaintiff exercising her freedom of speech, Dodds denied Plaintiff's ability to complete required research and access group meetings to complete her academic coursework. The University condoned Dodds' denial of Plaintiff obtaining her degree.

68.     Due to the Defendants' discriminatory and retaliatory actions, Plaintiff did not obtain her graduate degree from the University and was therefore forced to attend another university.

69.     In retaliation to Plaintiff exercising her freedom of speech, Defendants subjected Plaintiff to a hostile environment while Plaintiff was attending the

University and trying to obtain her degree for which she paid tuition by means of teaching assistantship.

70.    Plaintiff reported to the University that Dodds told Plaintiff to take a semester off the University, transfer from the University to another university, and to get a job and the University failed to take corrective action to enable Plaintiff's right to continue her education without a hostile environment premised upon sex-based discrimination and retaliation.

71.    Defendants retaliation of Plaintiff for exercising her First Amendment rights was so severe that it barred Plaintiff's access to an equal opportunity to education as it took her chances of training, learning and gaining experience needed to obtain employment in her field.

72.    As a direct and proximate result of Defendants' unlawful discrimination and retaliation, Plaintiff has suffered economical and emotional damages.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that this Court:

(a)    Enter judgment against Defendants and in favor of Plaintiff for actual damages for financial loss, mental anguish, and emotional distress and punitive damages in amounts to be determined at trial and as are allowed under the statutes for which claims are stated herein;

(b)      Enter judgment against Defendants and in favor of Plaintiff for an injunction prohibiting the Defendants' wrongful actions, a fair investigation into Defendants' action and appropriate discipline of each of the individual Defendants;

(c)      Enter judgment against Defendants and in favor of Plaintiff for all costs sustained in connection with the prosecution of this action, including attorneys' fees and costs; and

(d)      Grant such other and further relief as justice requires.

## COUNT THREE – FOURTEENTH AMENDMENT VIOLATION
### (Equal Protection Clause)
### (Against all Defendants)

73.    Plaintiff restates every fact and allegation set forth in all paragraphs of this Complaint as if fully set out herein.

74.    Under 42 U.S.C. §1983, Plaintiff is afforded protection from Defendants' violations.

75.    The equal protection clause of the Fourteenth Amendment secures Plaintiff's right to be free from gender discrimination and retaliation.

76.    Title IX of the Education Act Amendments of 1972 (20 U.S.C. § 1681) prohibits discrimination based on sex in educational institutions receiving federal funding.

77.    At all times herein mentioned, the University was a public university receiving federal financial assistance through grants and federally assisted tuition payments collected from students.

78.    34 CFR § 106.44 provides that such institutions must respond affirmatively to when a school official with the ability to take corrective measures receives actual knowledge that a student may have been discriminated against on the basis of sex.

79.    Defendants committed sex-based discrimination and/or retaliation as stated in the facts contained herein.

80.    McCune sexually assaulted Plaintiff and Plaintiff reported said actions to the University.

81.    Defendants violated Plaintiff's First Amendment by retaliating against her based on her complaints of Title IX discrimination.

82.    Defendants committed sex-based discrimination and/or retaliation as stated in the facts contained herein.

83.    McCune sexually assaulted Plaintiff and Plaintiff reported said actions to the University.

84.    Defendants violated Plaintiff's First Amendment by retaliating against her based on her complaints of Title IX discrimination.

85.     Plaintiff was discriminated and retaliated against by Defendants for making a complaint for sexual assault, sex discrimination and retaliation in violation of Title IX.

86.     On December 27, 2019, Plaintiff reported to the University Dodds' sexual assault and violations of the University's policies.

87.     Subsequent to Plaintiff's reporting of the sexual assault, Dodds engaged in the following retaliatory conduct directed at Plaintiff:

(1) Dodds would not allow Plaintiff to continue her research required for the graduate program at the University.

(2) Dodds told Plaintiff not to attend any group meetings required in the graduate program at the University.

(3) Dodds gave Plaintiff's graduate program research project to another student.

(4) Dodds excluded Plaintiff from the research lab where Plaintiff was required to complete research for the graduate program at the University.

(5) Dodds told Plaintiff to transfer, take a semester off, or to get a job rather than continuing in the current graduate program at the University.

(6) Dodds and the University caused Plaintiff a hostile environment.

(7) Plaintiff was forced to attend classes with Dodds.

(8) While Plaintiff was forced to attend classes with Dodds, Dodds gave "unwelcomed and dismissive" looks at Plaintiff.

(9) Plaintiff was excluded from Dodds' mandatory research lab.

(10) Due to Dodds' retaliatory behavior, Plaintiff was placed in a hostile environment while using her office space.

(11) Due to the hostile environment created by Dodds and the University, Plaintiff was forced to drop her classes and resign her plans, dreams, intentions and detrimental reliance on obtaining a graduate degree from the University.

(12) Plaintiff was not invited or allowed to attend a thesis defense/presentation of another student in Dodds' lab.

88.     Plaintiff reported to the University that Dodds had denied her the right to continue her required research.

89.     Plaintiff reported to the University that Dodds told Plaintiff to take a semester off the University, transfer from the University to another university, and to get a job.

90.     The IEC rendered: "Based on the totality of the circumstances and the information obtained pursuant to this investigation, and a more likely than not standard of proof, the greater weight of the evidence shows McCune did engage in sexual misconduct as defined by the University, Section 2.1.8.".

91.    The University failed and/or refused to adhere to the recommendation of the IEP and terminate McCune.

92.    The IEC recommendation was based "upon the greater weight of the evidence, which supports that McCune engaged in sexual assault and sexual harassment in violation of the university sexual misconduct policies."

93.    Plaintiff's complaint to the University that Dodds denied her the ability to complete her research or access to group meetings or to complete her academic coursework.

94.    Based on the University's failure/refusal to take immediate remedial actions based on Plaintiff's December 27, 2019 and subsequent complaints of retaliation, the University condoned Dodds' denial of Plaintiff obtaining her degree and itself denied Plaintiff's right to an education without sex-based discrimination and retaliation.

95.    Due to the Defendants' discriminatory and retaliatory actions, Plaintiff did not obtain her graduate degree from the University and was therefore forced to attend another university.

96.    The sex-based discrimination was so severe that it barred Plaintiff's access to an equal opportunity to education as it took her chances of training, learning and gaining experience needed to obtain employment in her field.

97.     As a direct and proximate result of Defendants' unlawful discrimination and retaliation, Plaintiff has suffered economical and emotional damages.

98.     Defendants did not provide Plaintiff with an explanation or important governmental objective that would justify the discrimination.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that this Court:

(a)     Enter judgment against Defendants and in favor of Plaintiff for actual damages for financial loss, mental anguish, and emotional distress and punitive damages in amounts to be determined at trial and as are allowed under the statutes for which claims are stated herein;

(b)     Enter judgment against Defendants and in favor of Plaintiff for an injunction prohibiting the Defendants' wrongful actions, a fair investigation into Defendants' action and appropriate discipline of each of the individual Defendants;

(c)     Enter judgment against Defendants and in favor of Plaintiff requiring Defendants to allowing Plaintiff reentry into the academic program from which she was enrolled at the time of the adversarial actions complained herein;

(d)     Enter judgment against Defendants and in favor of Plaintiff for all costs sustained in connection with the prosecution of this action, including attorneys' fees and costs; and

(d)      Grant such other and further relief as justice requires.

## COUNT FOUR - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

99.    Plaintiff restates every fact and allegation set forth in all paragraphs of this Complaint as if fully set out herein.

100.   Defendants' intentional actions caused Plaintiff emotional distress.

101.   Defendants' actions were extreme and outrageous that intentionally or recklessly caused Plaintiff severe emotional harm.

102.   Defendants' actions were intentional or reckless.

103.   Defendants' actions were a proximate cause of Plaintiff's harm as claimed herein.

104.   Defendants' actions caused severe emotional harm.

105.   Defendants knew or should have known that their actions would and did cause harm to Plaintiff.

106.   Defendants' actions were so careless and were a departure from the care a reasonable person would exercise in similar circumstances.

107.   Defendants' actions are so severe that Plaintiff could not endure it.

108.   McCune sexually assaulted Plaintiff.

109.   On December 27, 2019, Plaintiff reported to the University McCune's sexual assault and violations of the University's policies.

110.   Subsequent to Plaintiff's reporting of the sexual assault, Dodds engaged in the following retaliatory conduct directed at Plaintiff:

(1) Dodds would not allow Plaintiff to continue her research required for the graduate program at the University.

(2) Dodds told Plaintiff not to attend any group meetings required in the graduate program at the University.

(3) Dodds gave Plaintiff's graduate program research project to another student.

(4) Dodds excluded Plaintiff from the research lab where Plaintiff was required to complete research for the graduate program at the University.

(5) Dodds told Plaintiff to transfer, take a semester off, or to get a job rather than continuing in the current graduate program at the University.

(6) Dodds and the University caused Plaintiff a hostile environment.

(7) Plaintiff was forced to attend classes with Dodds.

(8) While Plaintiff was forced to attend classes with Dodds, Dodds gave "unwelcomed and dismissive" looks at Plaintiff.

(9) Plaintiff was excluded from Dodds' mandatory research lab.

(10) Due to Dodds' retaliatory behavior, Plaintiff was placed in a hostile environment while using her office space.

27

(11) Due to the hostile environment created by Dodds and the University, Plaintiff was forced to drop her classes and resign her plans, dreams, intentions and detrimental reliance on obtaining a graduate degree from the University.

(12) Plaintiff was not invited or allowed to attend a thesis defense/presentation of another student in Dodds' lab.

111.   Plaintiff complained to the University that Dodds denied her the ability to complete her research or access to group meetings to complete her academic coursework.  The University condoned Dodds' denial of Plaintiff obtaining her degree.

112.   Plaintiff reported to the University that Dodds told Plaintiff to take a semester off the University, transfer from the University to another university, and to get a job and the University failed to take corrective action to enable Plaintiff's right to continue her education without a hostile environment premised upon sex-based discrimination and retaliation.

113.   The University failed and/or refused to terminate Dodds based on the IEP.

114.   The sex-based discrimination was so severe that it barred Plaintiff's access to an equal opportunity to education as it took her chances of training, learning and gaining experience needed to obtain employment in her field.

115.  As   a   direct   and   proximate   result   of   Defendants'   unlawful discrimination and retaliation, Plaintiff has suffered economical and emotional damages.

116.  Defendants were aware of Plaintiff's economic and emotional damages caused by their discrimination, hostile environment and retaliation.

117.  Based on Defendants' actions, Plaintiff was forced to obtain her graduate degree at another University.

118.  Plaintiff's need and requirement for her graduate program and the Defendants' control over the graduate program placed Plaintiff in the "zone-of-danger", allowing the recovery of damages for negligent infliction of emotional distress due to the Plaintiff being located in the dangerous environment created by the Defendants' negligent and/or intentional actions of discrimination and retaliation which caused fright of harm and risk to Plaintiff.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that this Court:

(a)     Enter judgment against Defendants and in favor of Plaintiff for actual damages for financial loss, mental anguish, and emotional distress and punitive damages in amounts to be determined at trial and as are allowed under the statutes for which claims are stated herein;

(b)     Enter judgment against Defendants and in favor of Plaintiff for an injunction prohibiting the Defendants' wrongful actions, a fair investigation into

Defendants' action and appropriate discipline of each of the individual Defendants;

(c)        Enter judgment against Defendants and in favor of Plaintiff requiring Defendants to allowing Plaintiff reentry into the academic program from which she was enrolled at the time of the adversarial actions complained herein;

(d)        Enter judgment against Defendants and in favor of Plaintiff for all costs sustained in connection with the prosecution of this action, including attorneys' fees and costs; and

(d)        Grant such other and further relief as justice requires.

## COUNT FIVE – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

119.   Plaintiff restates every fact and allegation set forth in all paragraphs of this Complaint as if fully set out herein.

120.   McCune sexually assaulted Plaintiff.

121.   The University failed and/or refused to terminate McCune based on the IEP.

122.   Defendants caused Plaintiff to be subject to a hostile learning environment through discrimination and retaliation while trying to obtain her graduate degree.

123.   Defendants intended or knew or should have known that their actions would inflict emotional distress or knew or should have known that emotional distress was likely to result from their conduct causing injuries to Plaintiff.

124.   Defendants' conduct of sex discrimination and retaliation was extreme and outrageous to cause emotional distress causing injuries to Plaintiff.

125.   Defendants' conduct of sexual assault, sex discrimination and retaliation caused emotional distress so that Plaintiff was unable to endure it.

126.   Defendants knew or should have known that their actions violated the University's Policy.

127.   As a result of Defendants' actions, Plaintiff has been damaged financially and emotionally.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that this Court:

(a)      Enter judgment against Defendants and in favor of Plaintiff for actual damages for financial loss, mental anguish, and emotional distress and punitive damages in amounts to be determined at trial and as are allowed under the statutes for which claims are stated herein;

(b)      Enter judgment against Defendants and in favor of Plaintiff for an injunction prohibiting the Defendants' wrongful actions, a fair investigation into Defendants' action and appropriate discipline of each of the individual Defendants;

(c)      Enter judgment against Defendants and in favor of Plaintiff requiring

Defendants to allowing Plaintiff reentry into the academic program from which

she was enrolled at the time of the adversarial actions complained herein;

(d)      Enter judgment against Defendants and in favor of Plaintiff for all costs

sustained in connection with the prosecution of this action, including attorneys'

fees and costs; and

(d)      Grant such other and further relief as justice requires.

## VI.   JURY DEMAND

Plaintiff demands trial by jury on all issues so triable.

Dated February 8, 2023                      Respectfully Submitted,

                                            */s/ Keith Altman*
                                            Keith Altman, Esq.
                                            THE LAW OFFICE OF KEITH ALTMAN
                                            33228 West 12 Mile Road, Suite 375
                                            Farmington Hills, Michigan 48331
                                            Telephone: (248) 987-8929
                                            keithaltman@kaltmanlaw.com
                                            *Attorney for Plaintiff*